**TEXAS DEPARTMENT OF INSUR-ANCE, Division of Workers' Compensation, Petitioner,**

v.

**Bonnie JONES and American Home Assurance Company, Respondents**

No. 15–0025

Supreme Court of Texas.

Argued March 30, 2016

OPINION DELIVERED: June 24, 2016

Rehearing Denied September 23, 2016

Andrew John Lutostanski, Office of the Texas Attorney General, Administrative Law Division, Charles Roy, First Assistant Attorney General, David A. Talbot Jr., Office of the Attorney General, Administrative Law Division, David C. Mattax, Director of Defense Litigation, James Edward Davis, Warren Kenneth Paxton Jr., Office of the Attorney General, for Petitioner Texas Department of Insurance, Division of Workers' Compensation.

John V. Fundis, Downs & Stanford, P.C., Dallas, for Respondent American Home Assurance Company.

Leslie R Casaubon, Wm. Randell Johnson, The Casaubon Firm, L.L.P., Lewisville, for Respondent Bonnie Jones.

Justice Willett delivered the opinion of the Court, in which Chief Justice Hecht, Justice Green, Justice Johnson, Justice Guzman, Justice Lehrmann, Justice Devine, and Justice Brown joined.

The Texas workers' compensation regime was overhauled just over a quarter-century ago amid complaints of high costs for employers and low benefit rates for workers—inefficiencies that had reached "crisis proportions." [1]

The Legislature, concerned with attorney involvement in even the most routine, small-dollar claims, determined that one way to control costs was to constrain judicial review of agency determinations. Another cost-cutting reform: a formula that precisely provides how certain benefits are to be calculated. Eligibility for benefits requires satisfaction of detailed and particular conditions, and courts do not have carte blanche to approve settlements awarding benefits that clash with these criteria. Where supplemental income benefits are concerned, settlements cannot by-

George S. Christian, Texas Civil Justice League, Austin, for Amicus Curiae Texas Civil Justice League.

Bradley Dean McClellan, Richard Pena, Law Offices of Richard Pena, P.C., Austin, for Amicus Curiae Texas Workers' Advocates.

John E. Collins, Burleson Pate & Gibson LLP, Dallas, for Amicus Curiae Workers' Injury Law & Advocacy Group.

---

1. *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 512 (Tex.1995).

pass a statutory formula, nor can they facilitate benefits where none were due as a matter of law. But in this case, the trial court approved a noncompliant settlement, and the court of appeals affirmed. In the comp arena, the Legislature has mandated administrative certainty—stability that this settlement unsettles. Accordingly, we reverse the court of appeals' judgment and remand to the trial court for proceedings consistent with this opinion.

## Factual Background

Bonnie Jones was injured in 2005 during the course of her employment. Her employer's comp carrier, American Home Assurance Company (American Home), paid her various benefits. She later made three claims for supplemental income benefits (SIBs) for the periods known as the twelfth, fourteenth, and fifteenth quarters of 2011. The parties disagreed over whether Jones was entitled to SIBs for the fourteenth quarter.[2] A contested case hearing ensued—a species of administrative adjudication. Among other findings, the hearing officer made a finding of fact that Jones did not make an active effort to obtain employment for each week during the fourteenth quarter and accordingly was not entitled to benefits for that period. An appeals panel affirmed the decision.

Jones then sued American Home in district court, arguing she was entitled to SIBs for the fourteenth quarter. The Department of Insurance's Division of Workers' Compensation (Division) intervened after receiving a proposed judgment approving the settlement at issue here. Under the settlement, Jones and American Home agreed that Jones was entitled to a partial award of SIBs, amounting to $1,572.90. The Division drew attention to the administrative determination that Jones had not fulfilled the mandatory work search requirements for the fourteenth quarter, and that a partial SIBs award flouts the statutory formula's edict to calculate the monetary entitlement in a precise way.

The trial court approved the proposed settlement, and the Division appealed. The court of appeals did not address whether the trial court should have considered whether Jones satisfied the requisite work-search requirements. Homing in on a general policy of encouraging settlement, and ignoring the particularities that the revamped workers' comp scheme provides, the court of appeals affirmed the trial court's judgment.[3] This appeal followed.

**Injured workers are eligible for SIBs when they satisfy precise criteria, and the Labor Code forbids settlements that provide awards when these requirements have not been met.**

The Code allows parties to seek judicial review[4] of the Division's determination of "eligibility for supplemental income benefits."[5] The claimant must have "demonstrate[d] an active effort to obtain employment" during each week of the "qualifying period."[6] The Division, pursuant to its rulemaking authority, has further specified:

   (1) An injured employee demonstrates an active effort to obtain employment by meeting at least one or any combi-

---

2. The parties disagree over the exact duration of this period, but that difference is one of only a day.

3. 498 S.W.3d 610, 615–16.

4. *See generally* Tex. Lab. Code §§ 410.251–.258.

5. 28 Tex. Admin. Code § 130.102.

6. *Id.* § 130.102(d)(1).

nation of the following work search requirements each week during the entire qualifying period:

(A) has returned to work in a position which is commensurate with the injured employee's ability to work;

(B) has actively participated in a vocational rehabilitation program as defined in § 130.101 . . . ;

(C) has actively participated in work search efforts conducted through the Texas Workforce Commission (TWC);

(D) has performed active work search efforts documented by job applications; or

(E) has been unable to perform any type of work in any capacity, has provided a narrative report from a doctor which specifically explains how the injury causes a total inability to work, and no other records show that the injured employee is able to return to work.[7]

■ An employee may also receive benefits if she has "reasonable grounds for failing to comply with the work search requirements."[8] One cannot be partially eligible for SIBs. Under the Code, injured workers are either eligible or ineligible.

Moreover, an injured worker seeking SIBs must demonstrate that "he or she has, each week during the qualifying period, made the minimum number of job applications and or work search contacts consistent with the work search contacts established by TWC which are required for unemployment compensation in the in-

jured employee's county of residence."[9] Once again looking to the plain meaning of this text, "minimum" means "the least quantity assignable, admissible, or possible in a given case."[10] Further, a criterion is "required" if it is necessary or essential[11] —without its satisfaction, rights vanish.

Thus, an injured worker must fully meet the necessary minimum work search requirements in order to be SIBs-eligible. In this case, the parties dispute whether Jones made the necessary number of work searches during the fourteenth quarter in order to qualify for SIBs during that period. The Division made a finding of fact that she did not–a finding that Jones appealed. However, the trial court did not make a factual determination concerning Jones's work-search attempts, if she made any at all. The possibility therefore exists that she did not meet the Code's strict work-search requirements, and that as a result she is not entitled to SIBs for the fourteenth quarter as a matter of law. For the court to approve a settlement that awards Jones "partial" SIBs in this context is a far cry from the approval of only those settlements that adhere to all appropriate provisions of the Code.

**When there is no dispute over whether the worker satisfied the eligibility requirements during a particular quarter, a court can still approve settlements of SIBs claims.**

■ It is important to note that parties can still settle *certain* disputes over SIBs awards. Where there is no disagreement that a worker has or has not satisfied the strict eligibility requirements, a court can approve settlements of those claims.

7. *Id.*

8. *Id.* § 130.102(d)(2).

9. *Id.* § 130.102(f).

10. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Philip G. Gove ed., 1961).

11. *Id.*

It need not conduct a full-blown trial. Indeed in this case, the trial court—validly—did just that with respect to the claims for the twelfth and fifteenth quarters. When parties do disagree, however, on whether the worker complied with the eligibility requirements, a court cannot approve of a settlement that declares the worker "partially" eligible for SIBs during a given quarter.

### The Labor Code and Division regulations provide a detailed formula for the calculation of SIBs, and this formula is one of the "appropriate provisions of law" to which all SIBs settlements must adhere.

The Texas Labor Code provides a tight framework for court approval of workers' compensation settlements. A comp claim may not be settled "contrary to the provisions of the appeals panel decision issued on the claim or issue unless a party to the proceeding has filed for judicial review."[12] Further, the court may not approve a settlement except on a finding that "the settlement adheres to all appropriate provisions of the law."[13] A settlement that "on its face" does not comply with all appropriate statutory provisions "is void."[14] The statute provides for injured workers to receive SIBs, and emphasizes—in the very first provision of Subchapter H—that such an award, "whether [granted] by the commissioner or a court, shall be made in accordance with this subchapter."[15]

The Labor Code makes clear that only court-approved workers' compensation settlements are allowed, and in turn, that court approval is contingent upon the settlement's compliance with the rest of the Workers' Compensation Act.[16]

The Code contains a precise formula for calculating the amounts of SIBs to which an injured worker is entitled: "[T]he amount . . . for a week is equal to 80 percent of the amount computed by subtracting the weekly wage the employee earned during the reporting period . . . from 80 percent of the employee's average weekly wage. . . ."[17]

The Division's applicable regulation, promulgated pursuant to the Labor Code,[18] also specifies in great detail how a SIBs award should be calculated:

> Subject to any approved reduction for the effects of contribution, the monthly supplemental income benefit payment is calculated quarterly as follows:
>
> (1) multiply the injured employee's average weekly wage by 80% (.80);
>
> (2) add the injured employee's wages for all 13 weeks of the qualifying period;
>
> (3) divide the total wages by 13;
>
> (4) subtract this figure from the result of paragraph (1) of this subsection;
>
> (5) multiply the difference by 80% (.80);
>
> (6) if the resulting amount is greater than the maximum rate under the Act, Labor Code, § 408.061, use the maximum rate; and,

---

12. Tex. Lab. Code § 410.256(a).

13. *Id.* § 410.256(b)(2).

14. *Id.* § 410.256(g) ("Settlement of a claim or issue must be in compliance with all appropriate provisions of law. . . . A settlement which on its face does not comply with this section is void.").

15. *Id.* § 408.141.

16. *See generally id.* ch. 408.

17. *Id.* § 408.144(b).

18. *Id.* § 408.1415.

(7) multiply the result by 4.34821.[19]

■ We construe the Workers' Compensation Act, like other statutes, by considering the plain meaning of the text, given the statute as a whole.[20] A SIBs award must be "equal" to the sum that the formula yields.[21] Given that the Court has never considered the question of whether parties in a workers' comp dispute can settle for an amount that deviates from the formulaic output, we turn to the language of the Code.

The verb "to adhere" means "to bind oneself to observance."[22] It connotes an attachment strong enough to have been "glued" into place.[23] Thus, if courts can only approve settlements that adhere to all appropriate provisions of the law, such approval is contingent upon a *very* thorough consistency with the rest of the Code's "appropriate provisions."[24]

■ The adjective "appropriate" denotes that which is "specially suitable" with respect to the word or phrase it modifies.[25] Consequently, provisions of the law that are appropriate to SIBs are those parts of the Labor Code which are especially suitable to these benefits. The statutory requirement that settlements "adhere[ ] to all appropriate provisions of the law,"[26] then, means that settlements must stick closely to the Code provisions that are particularly pertinent to SIBs awards.

■ The Legislature's detailed and precise formula that governs the calculation of the amount of SIBs to which injured workers are entitled is a particularly "appropriate" provision of law. Further, a court can only approve a SIBs award made in accordance with Subchapter H of the Code—the very subchapter that contains the formula. Therefore, we hold that a court can only approve settlements that are strictly consistent with—indeed, settlements which "adhere[ ] to"—the formula for calculating SIBs awards.[27]

■ The plain language of the Code lays out a prescription for calculating the amount of SIBs that injured workers are entitled to receive, and courts may only approve settlements that adhere to the formula. Courts cannot approve a settlement for a dollar value that is not "equal to" the output of the formula as applied to facts particular to the injured employee, such as his average weekly wage.[28] Yet that is exactly what the trial court did here.

**The Legislature extensively reformed the workers' compensation framework in order to discourage opportunistic suits seeking small-money judgments—suits prone to generating settlement awards regardless of their underlying merits.**

■ We acknowledge that civil litigants are generally free to settle whenever, and on whatever terms, they wish. Parties naturally weigh potential costs and bene-

---

19. 28 Tex. Admin. Code § 130.102(g).

20. *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452, 454 (Tex.2012) (noting that "legislative intent emanates from the Act as a whole, and not from one isolated portion").

21. Tex. Lab. Code § 408.144(b).

22. Webster's Third New International Dictionary (Philip G. Gove ed., 1961).

23. *Id.*

24. Tex. Lab. Code § 410.256(b).

25. Webster's Third New International Dictionary (Philip G. Gove ed., 1961).

26. Tex. Lab. Code § 410.256(b).

27. *Id.*

28. *Id.* § 408.061.

fits alongside the relative probabilities of litigation success. But while Texas public policy generally favors the settlement of legal disputes,[29] the workers' comp scheme imposes special rules.

As noted above, while the Workers' Compensation Act provides for the possibility of settlement, it also includes the cautionary language—not usually found where other causes of action are concerned—that bars court approval of settlements that do not adhere to all appropriate provisions of law.[30] Moreover, the Legislature went as far as to specify a formula replete with precise percentages and invocations of mathematical operations such as subtractions of exact numerical amounts.[31] The Division, in promulgating regulations pursuant to the Labor Code's grant of rulemaking authority, has adopted a similarly precise computation governing SIBs awards.[32] From these provisions it is clear that a carefully prescriptive body of law demarcates the contours within which trial courts may render judgments that award SIBs, regardless of whether the court enters such judgments after trial or through approval of a pretrial settlement.

Indeed, as we have previously—and repeatedly—emphasized, the chief problem with the old workers' comp framework was that the unfettered ability to seek *de novo* judicial review spurred parties to treat the administrative forum as a mere "way station" to the courthouse.[33] The current Act includes provisions that are geared to "re-duce the number and cost" of trial courts doing a double-take on agency determinations.[34] As we noted in *Garcia* twenty-plus years ago, attorney involvement in Texas workers' compensation claims was more than six times higher than in seventeen other states.[35]

We hold that settlement of workers' compensation disputes is tightly restricted to only those settlements that strictly comply with the meticulous governing Code provisions at hand. SIBs awards are typically relatively small compared with the costs of going to trial, and as a result are particularly vulnerable to the sort of nuisance suits that the Legislature sought to curb. If an injured worker is not eligible for SIBs, but is aware that the employer's insurer would rather pay some fraction of the formula's output instead of going to trial to prove the suit non-meritorious, there is a perverse incentive to appeal *any* of the Division's decisions not to award SIBs. It is this sort of opportunism that the Code is designed to curtail.

The Code's requirement that settlements comply with "all appropriate provisions of law" extends beyond those statutory requirements relating specifically to settlements.[36] Holding otherwise would render sections 410.256(b)(2) and (g) of little substance, since the Code already imposes specific requirements on settlements which have the force of law. The Code requires more, however, if we are to

---

29. *See Forest Oil Co. v. McAllen,* 268 S.W.3d 51, 60 (Tex.2008); *Transp. Ins. Co. v. Faircloth,* 898 S.W.2d 269, 280 (Tex.1995); Tex. Civ. Prac. & Rem. Code § 154.002.

30. Tex. Lab. Code § 410.256(b).

31. *Id.* § 408.144.

32. 28 Tex. Admin. Code § 130.102.

33. *See, e.g., Tex. Mut. Ins. Co. v. Ruttiger,* 381 S.W.3d 430, 440 (Tex.2012).

34. *Id.*

35. *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 513 (Tex.1995).

36. *E.g.,* Tex. Lab. Code §§ 408.005, 410.029, 410.258.

read it as a whole and give meaning to all its provisions.

Again, our ruling will not do away with all settlements. For example, the claimant and carrier could, under our decision, agree that the claimant was eligible for SIBs in one period but not another, and settle the case accordingly. We see no reason the trial court could not accept the parties' uncontested representations regarding the eligibility requirements or an applicable exception to meeting those requirements. In this case, the parties agreed that Jones was not entitled to SIBs for the twelfth quarter, and was entitled to SIBs for the fifteenth quarter. The Division does not complain of a settlement where the parties agree to full SIBs under statutory formulae for one period but no recovery for another period, nor do we. Further, our decision would not require the trial court independently to make eligibility findings where neither side is willing to proffer evidence on and otherwise litigate the issue. We do not suggest such an unworkable result, nor does any reasonable construction of the Code. Prohibiting a partial settlement for amounts inconsistent *on their face* with statutory requirements [37] does not imply that the trial court must conduct an imaginary trial without the benefit of active participation of the parties in an adversarial proceeding.

Finally, we do not agree with Jones that settlement of all issues relating to a claim for SIBs in a particular quarter is not a settlement at all, but only an "agreement" under the Code. If all issues relating to that claim are resolved, the resolution is by definition a "settlement" "of all the issues" relating to that "workers' compensation claim." [38] Here, Jones filed three separate appeals to the district court of

her three claims for SIBs in the twelfth, fourteenth, and fifteenth quarters, and those claims were consolidated at the request of the parties.

* * *

Texas workers' compensation law embodies countless policy choices. Regardless of general public policy promoting settlement, it is evident that in the area of workers' compensation, and SIBs awards in particular, the Labor Code limits judicial review of agency award determinations. The Legislature's careful workers' comp scheme is phrased in mandatory, not permissive, language.

A SIBs settlement cannot recast a mandatory formula to have a discretionary application. Neither can a court—explicitly commanded to approve only those settlements that comply with all appropriate provisions of law—condone a settlement for a "partial" SIBs award without considering whether or not the worker has satisfied the threshold work-search requirements.

Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

Justice Boyd filed a dissenting opinion.

Justice Boyd, dissenting.

The Court holds that the Texas Workers' Compensation Act prohibits trial courts from approving settlements that award supplemental income benefits unless the settlement complies with all of the Act's provisions governing an *award* of such benefits. Because I would hold that the Act prohibits courts from approving

---

**37.** See id. § 410.256(g) ("A settlement which on its face does not comply with this section is void.").

**38.** Id. § 401.011(40).

settlements unless they comply with the provisions governing *settlements* that award such benefits, I respectfully dissent.

## I.

To be entitled to supplemental income benefits (SIBs) under the Texas Workers' Compensation Act, an employee must meet several statutory requirements. TEX. LAB. CODE § 408.142(a).[1] If the employee is entitled to SIBs, the amounts are "calculated quarterly and paid monthly," according to a statutory formula. *Id.* § 408.144(a).[2]

An insurance carrier may dispute the employee's entitlement to SIBs, the amount of the SIBs, or both. *Id.* § 408.147(a).[3] In either event, the carrier must request a benefit review conference, at which a Division of Workers' Compensation officer mediates to help the parties resolve their disputes by agreement. *Id.* §§ 408.147(a), 410.021–.022. If the carrier and employee are unable to resolve all of their disputes at the benefit review conference, either of them may seek further relief, first through a contested case hearing, then through an appeals panel, and finally by filing suit for judicial review in an appropriate trial court. *Id.* §§ 410.151(a), 410.202, 410.251. Alternatively, the parties can agree to engage in binding arbitration. *Id.* § 410.104.

Through all of these stages of the dispute-resolution process, the Act encourages the parties to reach agreements and settlements to resolve their disputes.[4] At the benefit review conference, any "dispute

---

1. Specifically, an employee is entitled to SIBs if, "on the expiration of the impairment income benefit period[,]" the employee:

   (1) has an impairment rating of fifteen percent or more from the compensable injury;
   (2) has not returned to work or has returned to work earning less than eighty percent of the employee's average weekly wage as a direct result of the employee's impairment;
   (3) has not elected to commute a portion of the impairment income benefit; and
   (4) has complied with the work-search compliance standards.

   TEX. LAB. CODE § 408.142(a). The work-search compliance standards require the employee to provide satisfactory evidence to the Division of Workers Compensation of:

   (1) active participation in a vocational rehabilitation program;
   (2) active participation in work search efforts conducted through the Texas Workforce Commission; or
   (3) active work search efforts documented by job applications submitted by the recipient.

   *Id.* § 408.1415(a).

2. Specifically, "the amount of a supplemental income benefit for a week is equal to 80 percent of the amount computed by subtracting the weekly wage the employee earned during the reporting period provided by Section 408.143(b) from 80 percent of the employee's average weekly wage...." *Id.* § 408.144(b). The method for calculating the employee's "average weekly wage" differs depending on whether the employee is a full-time employee; part-time employee; employee with multiple employment; seasonal employee; minor, apprentice, trainee, or student; member of the state military forces or Texas Task Force 1; or school district employee. *See id.* §§ 408.041–.044, 408.0445–.0446. Under any calculation, the weekly amount "may not exceed 70 percent of the state average weekly wage rounded to the nearest whole dollar." *Id.* § 408.061(c).

3. *See also id.* § 408.147(c) (referring to insurance carrier's dispute of a "determination that an employee is entitled to [SIBs] or the amount of [SIBs] due").

4. The Workers' Compensation Act defines the term "[a]greement" as "the resolution by the parties to a dispute under this subtitle of one or more issues regarding an injury, death, coverage, compensability, or compensation. The term does not include a settlement." *Id.* § 401.011(3). The term "[s]ettlement," by contrast, refers to a "final resolution of all the issues in a workers' compensation claim that are permitted to be resolved under the terms of this subtitle." *Id.* § 401.011(40).

may be resolved either in whole or in part" by agreement, and the agreement is binding on both parties with only limited exceptions. *Id.* §§ 410.029–.030. If the parties are unable to resolve their disputes at the benefit review conference and agree to arbitration, one "purpose" of the arbitration is to "enter into formal, binding stipulations on issues on which the parties agree," and the arbitrator's award must include a statement of "the parties' stipulations on uncontested issues." *Id.* §§ 410.101(1), 410.118(c)(3). The arbitrator's award based on any such stipulations "is final and binding on all parties" and constitutes "a final order of the division." *Id.* § 410.119. If the parties instead pursue a contested case hearing, the parties may tender stipulations or agreements at the hearing. *Id.* § 410.166. Those stipulations and agreements are "final and binding" and not subject to further review. *Id.* Finally, if a party files suit for judicial review, the parties may settle any "claim or issue" with the court's approval. *Id.* § 410.256(a).

The parties' right to settle their disputes, however, is not unlimited; the Act imposes several specific requirements and restrictions on settlements. For example, a settlement generally cannot provide for a lump-sum payment of benefits. *Id.* §§ 408.005(a), 410.256(c)(1). In addition, the parties cannot agree to limit or terminate an employee's right to medical benefits. *Id.* §§ 408.005(b), 410.256(c)(2). And if the parties dispute the extent of the employee's impairment, they cannot agree to resolve that issue before the employee reaches "maximum medical improvement," and any such settlement or agreement must use the Act's impairment rating guidelines. *Id.* §§ 408.005(c), 410.256(d).

Moreover, throughout the stages of the dispute-resolution process, the commissioner—and at the judicial-review stage, the court—must approve any settlement. If a dispute is resolved during the administrative process, the commissioner must confirm that the settlement "accurately reflects the agreement between the parties," "reflects *adherence to all appropriate provisions of law* and the policies of the division," and "is in the best interest of the claimant." *Id.* § 408.005(e) (emphasis added). Similarly, once a party files suit for judicial review, the trial court must approve any settlement, but only if it "accurately reflects the agreement between the parties," "*adheres to all appropriate provisions of the law,*" and "is in the best interest of the claimant." *Id.* § 410.256(b) (emphasis added).

Before a court can approve a settlement, the party who filed the suit must file a copy of the proposed settlement with the division, and the commissioner must review it "to determine compliance with *all appropriate provisions of the law.*" *Id.* § 410.258(c) (emphasis added). If the commissioner determines that the proposed settlement "is not in *compliance with the law,*" the commissioner may intervene and "inform the court of each reason the commissioner believes the proposed judgment or settlement is not in *compliance with the law.*" *Id.* § 410.258(c), (e) (emphases added). Finally, any settlement "approved without complying with the requirements" to notify the commissioner or that "on its face does not comply with" the court-approval requirements "is void." *Id.* §§ 410.256(g), 410.258(f).

## II.

The Act thus makes it exceedingly clear that any settlement of a claim for workers' compensation benefits, including SIBs, must adhere to and comply with all "applicable provisions of the law." But "applicable" to what? The Court construes this phrase to refer to all of the Act's require-

ments that are "especially suitable" or "particularly pertinent" to an award of SIBs.[5] Even more broadly, the Court suggests that any settlement of any claim for any workers' compensation benefit must comply with all of the Act's provisions that govern the employee's right to that benefit.[6] Thus, in the Court's view, the amount awarded in the settlement of a claim for SIBs must perfectly match the amount to which the worker would be entitled under the statute's formula.[7]

I disagree. I would hold that the Act requires that settlements adhere to provisions that are "applicable" not to awards of SIBs but to *settlements* of claims seeking such awards. As the Court notes, the provisions that require settlements to adhere to and comply with all "applicable" provisions govern settlements of all claims for all types of workers' compensation benefits, not just claims for SIBs.[8] Nothing in these provisions specifically addresses, or provides any indication that they relate to,

the amount of a SIBs award to which the employee may be entitled. Instead, the one thing that all of these provisions address is the *settlement* of a claim, whether it is a claim for SIBs or any other type of benefit.

The Court's construction would require the commissioner and courts to ensure that settlements adhere to *all* requirements for an award of SIBs, not just those that govern the award's amount. This is so because the provisions that govern the award's amount are not the only provisions that are "especially suitable" or "particularly pertinent" to SIBs awards. The provisions that govern an employee's *entitlement* to SIBs are just as "suitable" and "pertinent" to a SIBs award. If, as the Court concludes, the commissioner and trial courts can only approve a settlement awarding SIBs when the amount actually matches the amount the statutory formula would permit, then it necessarily follows that they can only approve the settlement

**5.** *See ante* at 615 ("[P]rovisions of the law that are appropriate to SIBs are those parts of the Labor Code which are especially suitable to these benefits."), 615 (holding that "appropriate provisions" means those "that are particularly pertinent to SIBs awards").

**6.** *See ante* at 614 ("[C]ourt approval is contingent upon the settlement's compliance with the rest of the Workers' Compensation Act."); 615 ("[Court] approval is contingent upon a *very* thorough consistency with the rest of the Code's 'appropriate provisions.'"); 616 ("We hold that settlement of workers' compensation disputes is tightly restricted to only those settlements that strictly comply with the meticulous governing Code provisions at hand.").

**7.** *See ante* at 611–12 ("Where supplemental income benefits are concerned, settlements cannot bypass a statutory formula.... "); 615 ("A SIBs award must be 'equal' to the sum that the formula yields."); 615 (holding that the formula "is a particularly 'appropriate' provision of law"); 615 ("[W]e hold that a court can only approve settlements that are

strictly consistent with—indeed, settlements which 'adhere[ ] to'—the formula for calculating SIBs awards."); 615 ("[C]ourts may only approve settlements that adhere to the formula."); 615 ("Courts cannot approve a settlement for a dollar value that is not 'equal to' the output of the formula as applied to facts particular to the injured employee, such as *his average weekly wage*.").

**8.** The provisions that require the commissioner to ensure that a settlement reached during the administrative stage adheres to all "appropriate provisions of law" appear in subchapter A of chapter 408, which contains "General Provisions" that apply not just to SIBs claims but to all claims for all types of benefits. *See id.* § 408.005(c), (d). Similarly, the provisions that require the court and commissioner to ensure that a settlement reached during the judicial-review stage complies with "all appropriate provisions of law" appear in subchapter F of chapter 410, which contains "General Provisions" that apply not just to SIBs claims, but to all claims for all types of benefits. *See id.* §§ 410.256, 410.258.

when the employee's qualifications actually match all of the entitlement requirements. The result of this construction, of course, is that the court must take evidence and, in essence, try the case despite the parties' settlement to ensure that the parties have not agreed to an award that the employee is not entitled to receive or to an award amount that does not match the statutory formula. In effect, there can be no settlements at all.

The Court appears to agree that its construction requires courts to ensure that settlements comply with the Act's entitlement provisions as well as the provisions that govern the award's amount.[9] But the Court then suggests that, even though the entitlement provisions are "applicable provisions of law" under the Court's construction of that phrase, trial courts need not ensure that a settlement complies with those provisions if the parties have agreed to settle the entitlement dispute.[10] The Court thus holds that courts need not ensure that a settlement adheres to the entitlement provisions *if* the parties agree to settle that issue even though those provisions are "applicable" to a SIBs award, but courts must ensure the settlement adheres to the amount requirements *even when* the parties agree to settle that issue.

The first problem with the Court's construction is that it is simply not logical. If (as the Court holds) the trial court must ensure that all settlements adhere to and comply with all provisions that are applicable to SIBs awards, and if (as the Court concedes) the entitlement provisions are "applicable" to SIBs awards, then the Act requires courts to ensure that settlements

adhere to and comply with the entitlement provisions. Under the Act's plain language, the parties' agreement to settle a dispute over the employee's entitlement to SIBs *triggers* the court's duty to ensure that the settlement complies with the entitlement provisions. That agreement to settle the entitlement dispute cannot then also be the fact that *eliminates* that same duty.

The second problem with the Court's construction is its failure to justify its attempt to distinguish between an agreement to settle an entitlement dispute and an agreement to settle a dispute over the award's amount. The only justification I can deduce from the Court's opinion is that, in the Court's view, the Act's entitlement provisions require "strict[ ] consisten[cy]" with "detailed and particular conditions," *ante* at 611, while the provisions that govern the award's amount provide a "detailed and precise formula," *ante* at 615, that "precisely provides how certain benefits are to be calculated," *ante* at 611; *see ante* at 616 (stating that the formula is "replete with precise percentages and invocations of mathematical operations such as subtractions of exact numerical amounts"). The Court thus seems to suggest that parties cannot agree to settle a dispute over an award's amount because, in light of the statutory formula, there is nothing to dispute at all. If that is the Court's premise, the Act proves the premise wrong because the calculation of a SIBs award's amount is no less subject to dispute than the employee's entitlement to that award.

---

**9.** *Ante* at 611 ("Eligibility for benefits requires satisfaction of detailed and particular conditions, and courts do not have carte blanche to approve settlements awarding benefits that clash with these criteria."), 612 (stating that settlements cannot "facilitate benefits where none were due as a matter of law").

**10.** *Ante* at 617 (stating that trial courts need not "independently" make "eligibility findings where neither side is willing to proffer evidence on and otherwise litigate the issue").

Under the formula, the amount of a SIB for a week is equal to eighty percent of the difference between (1) eighty percent of the employee's pre-injury "average weekly wage," less (2) the post-injury "weekly wage the employee earned during the reporting period." TEX. LAB. CODE § 408.144(b). While this is a "detailed and precise formula," *ante* at 615, the facts necessary to support the calculation are subject to numerous disputes. For example, the "employee's average weekly wage" must be determined under one of six different statutory provisions, depending on the actual underlying facts. TEX. LAB. CODE § 408.144(b).[11] The Act specifically recognizes that these facts may be disputed, even to the point that it is "impractical or unreasonable" to compute the employ-

ee's average weekly wage. *See, e.g., id.* § 408.042(f). The Act even authorizes the commissioner to select an average weekly wage amount "that is fair and just to both parties or is *in the manner agreed to by the parties.*" *Id.* § 408.042(f) (emphasis added).

Similarly, the parties may dispute the amount of the "weekly wage the employee earned during the reporting period." *Id.* § 408.144(b). For example, if an employee who claims to have no earnings during the reporting period was "offered a bona fide position of employment that the employee [was] capable of performing, given the physical condition of the employee and the geographic accessibility of the position to the employee," then "the employee's weekly wages are considered to be equal to the

11. To list just some of those relevant facts, the method for determining an employee's average weekly wage differs depending on:

— whether the employee "worked for the employer for at least the 13 consecutive weeks immediately preceding an injury," and
  • if so, whether that employee's average weekly wage "has not been fixed or cannot be determined," and
  • if not, the "usual wage that the employer pays a similar employee for similar services" or "the usual wage paid in that vicinity for the same or similar services," *id.* § 408.041(a), (b);
— whether the employee's "employment has been irregular" or "the employee has lost time from work ... because of illness, weather, or another cause beyond the control of the employee," *id.* § 408.041(c);
— whether the employee "limits the employee's work to less than a full-time workweek as a regular course of that employee's conduct," *id.* § 408.042(a);
— whether the employee engaged in "multiple employment" during the thirteen-week period, and if so,
  • the amount of the weekly wage the employer "pays similar employees for similar services" or "the usual weekly wage paid in that vicinity for the same or similar services," and

  • the amount of the employee's wages "that are reportable for federal income tax purposes," *id.* § 408.042(c), (e);
— whether the employee was a "seasonal employee"—that is, one "who, as a regular course of the employee's conduct, engages in seasonal or cyclical employment that does not continue throughout the entire year"—and if so, the "amount of total wages earned by the employee during the 12 months immediately preceding the date of the injury," *id.* § 408.043(b), (d);
— whether the employee was a "minor, apprentice, trainee, or student at the time of the injury," the earnings at the time of the injury were "limited" because the position was "intended to enhance the employee's future wages," and the wages "would reasonably be expected to change because of a change of employment during that period," and if so, the "level of expected wages during the period that benefits are payable," *id.* § 408.044(a);
— whether the employee is a "member of the state military forces ... engaged in authorized training or duty," *id.* § 408.0445(a); and
— whether the employee is a "school district employee," and if so, the "total amount of wages earned by the employee during the 12 months immediately preceding the date of the injury," *id.* § 408.0446(c).

weekly wages for the position offered to the employee." *Id.* § 408.144(c). The amount of the employee's weekly wage thus depends on whether the employee earned anything during the reporting period, and if not, on whether the employee was "offered a bona fide position of employment," all of which are additional facts subject to dispute.

In short, the formula for determining the amount of a SIBs award is not an automatic indisputable calculation, but depends instead on numerous facts that are as subject to dispute as the facts necessary to establish the employee's entitlement to such an award.[12] Thus, there is no basis in the Act or in fact to distinguish a dispute over the amount of a SIBs award from a dispute over entitlement to the award for purposes of the issue we address today. Either the provisions governing entitlement and the provisions governing the amount are both "applicable provisions of law" or neither is.

In this case, it appears the parties did not dispute the facts on which the Act determines the *amount* of the SIBs award, but instead agreed to "split the difference" as a means to resolve their dispute over the employee's *entitlement* to the award. This is what the Court seems to find so objectionable about this particular settlement. *See ante* at 613 ("For the court to approve a settlement that awards Jones 'partial' SIBs in this context is a far cry from the approval of only those settlements that adhere to all appropriate provisions of the Code."). But our decision depends not on whether we find this set-

tlement to be objectionable, but on whether the Act prohibits the trial court from approving such a settlement. And that depends wholly on whether the provisions that determine the amount of a SIBs award are "applicable provisions of law" to which a settlement must adhere. If (as the Court contends) they are, then so are the eligibility provisions, and there can be no true settlements at all. But if (as I contend) they are not, then the settlement need not comply with or adhere to them, and it is irrelevant whether the parties split the difference or disputed the underlying facts. The calculation of the amount of SIBs is just as fact-dependent and just as subject to dispute as the determination of the employee's entitlement to SIBs, if not more so. There is no distinction between the two that justifies treating the provisions that determine the amount of a SIBs award as an "applicable provision of law" but not the eligibility provisions.

### III.

For these reasons, I cannot agree with the Court's construction of the phrase "applicable provisions of law" to refer to all provisions that govern an *award* of workers' compensation benefits. Instead, I would construe "applicable provisions" to refer to those that apply to *settlements* of a claim for such an award. As noted, the Act contains numerous provisions that expressly govern such settlements, including provisions that prohibit settlements that award a lump-sum payment of benefits, TEX. LAB. CODE §§ 408.005(a), 410.256(c)(1); that limit or terminate a right to medical

---

12. *See, e.g., Daniels v. Indem. Ins. Co. of N. Am.,* No. 10–11–00142–CV, 2013 WL 3770955, at *1 (Tex.App.–Waco 2013, no pet.) (mem.op.) (addressing dispute over whether employee's post-injury earnings were less than eighty percent of his "pre-injury average weekly wage"); *Tex. Mut. Ins. Co. v. Cruz,* 307 S.W.3d 925, 926 (Tex.App.–Eastland 2010, pet. denied) (addressing dispute over the proper calculation "of a decedent's average weekly wage for the thirteen weeks prior to his death"); *Hartford Underwriters Ins. Co. v. Hafley,* 96 S.W.3d 469, 474 (Tex.App.–Austin 2002, no pet.) (addressing dispute over proper calculation of wages of employee who was self-employed).

benefits, *id.* §§ 408.005(b), 410.256(c)(2); that resolve an impairment dispute before the employee reaches maximum medical improvement or without using the impairment rating guidelines, *id.* §§ 408.005(c), 410.256(d); or that have not first been timely served on the commissioner, *id.* § 410.258. I would hold that these provisions that specifically govern *settlements* of workers' compensation claims are the "applicable provisions of law" to which the commissioner and courts must ensure any *settlement* adheres.[13] Because the Court holds otherwise, I respectfully dissent.

---

**13.** In rejecting this construction, the Court first asserts that the "Code's requirement that settlements comply with 'all appropriate provisions of law' extends beyond those statutory requirements relating specifically to settlements." *Ante* at 616. As support for this assertion, however, the Court cites to sections 408.005, 410.029, and 410.258, *ante* at n. 36, all of which relate specifically to settlements. *See* TEX. LAB. CODE §§ 408.005 (specifically prohibiting certain settlements, requiring commissioner and parties to sign settlements, specifying when commissioner shall approve a settlement, and addressing effective date and withdrawals of acceptance of settlements), 410.029 (permitting resolution of disputes during benefit review conference, requiring any such settlement or agreement to be written and signed, and providing for effective date of such a settlement), 410.258 (requiring parties to send copy of any proposed judgment or settlement to the division for approval).

Next, the Court asserts that this construction renders the provisions that require a trial court to ensure that a settlement adheres to all "appropriate" provisions "of little substance" and violates our duty to "give meaning to all" of the Act's provisions because "the Code already imposes specific requirements on settlements which have the force of law." *Ante* at 616. The obvious flaw in this argument is that the Act also "already imposes specific [substantive] requirements on [awards] which have the force of law," and yet the Court finds the provisions meaningful and of "substance" as to those requirements. In any event, the Court's argument overlooks the fact that the "substance" behind these provisions is to impose a duty on the trial courts to enforce the procedural requirements that apply to settlements. *Id.* § 410.256 (requiring court approval of settlements).